UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH STAMPS,<br><br>    Petitioner,<br><br>v.<br><br>RANDY GROUNDS, Warden,<br><br>    Respondent. | Case No. 12-05753 BLF (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY; DIRECTIONS TO CLERK** |

Petitioner, a California prisoner, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2009 criminal judgment.[1] The second amended petition is the operative petition in this action. Dkt. No. 57, ("Pet."). Respondent filed an answer on the merits. Dkt. No. 66, ("Ans."). Petitioner did not file a traverse although given an opportunity to do so. For the reasons set forth below, the petition is **DENIED**.

### I. BACKGROUND

On June 11, 2009, an Alameda County jury convicted Petitioner of first degree

---

[1] Petitioner proceeded *pro se* after court appointed counsel was permitted to withdraw as counsel after the Court found a lack of good cause to continue the appointment. Dkt. Nos. 58, 60, 62.

murder, with an enhancement for personal discharge of a firearm causing death. Ans., Ex. 1, Vol. 2 of Clerk's Transcript (2 CT) 411-413.[2] On October 5, 2009, the trial court sentenced Petitioner to 50 years to life in state prison. Ex. 2, Vol. 2 of Reporter's Transcript (2 RT) 421-424.

On April 27, 2011, the California Court of Appeal affirmed the judgment of conviction. Ex. 6. On August 10, 2011, the California Supreme Court denied review. Exs. 7, 8.

On November 8, 2012, Petitioner filed a habeas petition in this Court, containing both the claims he had exhausted on direct appeal and several unexhausted claims relating to juvenile sentencing issues. Subsequently, he filed a motion for stay and abeyance in order to exhaust his claims in state court, which was granted. Dkt. No. 10.

On December 20, 2012, Petitioner filed a habeas petition in the California Supreme Court. Following briefing, on March 12, 2014, the state high court denied the petition without prejudice to any relief Petitioner might be entitled to after the court decided other pending cases regarding juvenile sentencing. Ex. 9.

After additional proceedings, on October 17, 2016, this Court reinstated the stay to allow Petitioner to exhaust the juvenile sentencing claims. Dkt. No. 42. Petitioner filed a habeas petition in the state superior court, which agreed, pursuant to new procedures outlined in *People v. Franklin*, 64 Cal.4th 261 (2016), that Petitioner would be eligible for a parole hearing after 25 years, and that he could make a contemporaneous record of any factors that would affect his eligibility. Accordingly, Petitioner acknowledged that the juvenile sentencing claims were moot, and asked this Court to dismiss those claims and proceed on the other claims. Dkt. No. 52. The Court did so. Dkt. No. 53. On August 30, 2018, Petitioner filed a second amended petition raising three exhausted claims. Dkt. No. 57.

---

[2] All references to exhibits are to the exhibits filed in support of Respondent's answer, unless otherwise indicated. Dkt. Nos. 67-1. 67-2, 67-3.

2

## II. STATEMENT OF FACTS

The following brief summary is from the opinion of the state appellate court on direct appeal:

> Stamps shot and killed Elric Wheeler during an encounter in a shopping mall parking lot. When he walked up to the car in which Wheeler was riding as a passenger, Stamps was looking for a friend's dog that he thought the driver, Brandon Jaquez, had taken hostage to assure payment for a previous drug transaction that went wrong. Jaquez and Wheeler initially got out of the car and moved away, then headed back towards the car to prevent Stamps from taking it. As they approached, Stamps shot Wheeler in the chest.

*People v. Stamps*, No. A126440, slip op. at 1-2 (Cal. Ct. App. Apr. 27, 2011) (Ex, 6, hereinafter "Op.").

## III. DISCUSSION

### A. <u>Legal Standard</u>

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is

3

in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id.* at 412; *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

**B.      Claims and Analyses**

Petitioner raises the following three claims for federal habeas relief: (1) there was insufficient evidence to sustain the conviction for first degree murder on either an express malice or felony murder theory; (2) the trial court erred in instructing the jury on CALCRIM 361, depriving Petitioner of his right to due process; and (3) ineffective assistance of counsel for failing to request CALCRIM 522.

      **1.      Insufficient Evidence**

Petitioner was tried for first degree murder under the alternative theories of (1) premeditated and deliberate murder, and (2) felony murder committed during an attempted carjacking. Op. at 2. Petitioner claims the evidence was insufficient to support his conviction under either theory.

///

4

The state appellate court summarized the relevant factual background for this claim:

> Two days before the shooting, Jaquez met Stamps and sold him some marijuana. Jaquez also gave Stamps his cell phone number for any possible future deals. The next day, Stamps called Jaquez to buy more marijuana, and they met again. After Jaquez arrived with his friend Wheeler, Stamps and another man got into the back seat of Jaquez's car and asked to see the marijuana. When Jaquez handed it to them, they ran off without paying for it.
>
> The following day Jaquez saw Stamps and the other man standing in front of a house while he was driving through the neighborhood. As Jaquez drove closer, the two men ran inside the house and left a small dog on the front lawn. Soon after Jaquez drove by, he received a phone call from the telephone number he recognized as Stamps, and Jaquez heard "the same voice that called [him] for the weed." The caller demanded to know where his dog was, and he called Jaquez repeatedly over the next hour, threatening to kill him and his family unless he got his dog back. At trial, Jaquez denied that he took the dog, although a detective testified that Jaquez's friend, Joe Segon, said that he did.
>
> While he was getting the threatening phone calls, Jaquez arranged to meet Wheeler at a local mall. Jaquez drove to the mall with two passengers, and Wheeler got into the car. Wheeler told Jaquez that someone was looking for him about a dog. Just then, Jaquez saw Stamps standing outside the driver's door of his car, pointing a gun at him through the open window. Stamps said "Where's my fucking dog?" Jaquez got out of the car and left the key in the ignition. He told Stamps he did not know where the dog was. When Jaquez heard a male voice from the sidewalk say, "Just shoot him," he ran behind his car. Then he heard the voice call out, "Just take his car." Stamps pointed the gun at the three passengers and ordered them out of the car. Two of them went towards the sidewalk, and Wheeler walked over to Jaquez. As Stamps appeared to climb into the driver's seat, Jaquez and Wheeler began to walk back toward the car to prevent Stamps from taking it. Stamps stepped away from the car and backed up. When Jaquez and Wheeler were a few feet away, Stamps fired and hit Wheeler in the chest. Stamps got into a waiting car and drove away.
>
> When he first spoke to police, Jaquez seemed afraid and said he did not know the gunman, but he later identified a photo of Stamps. His account of the events in the mall parking lot was generally confirmed by eyewitness Jesse Calles, who was employed at a nearby store.
>
> When police arrived at the mall, they spoke to Joe Segon, who happened to be passing by when the shooting occurred. Segon told police he could point out the house of the men who might be responsible. He directed police to a house where a car was parked with a license plate that matched a partial number obtained by an eyewitness to the shooting. Police surrounded the house, and after a lengthy standoff, Stamps, Darell McDowell, and Danny Coleman surrendered. In the crawlspace under the house, the police found a

5

cell phone and semiautomatic handgun wrapped in a towel. Ballistics testing showed the gun matched the bullet that was retrieved from Wheeler's chest and a cartridge casing found at the scene.

McDowell refused to testify at trial despite a grant of immunity, and his police interview was admitted as a prior inconsistent statement. McDowell told police that although he recognized Jaquez's car in the parking lot, he was in a liquor store when the shooting occurred and did not see it. He denied telling Stamps to take the car. McDowell knew Jaquez because he recently bought marijuana from him, and he used his cell phone to call Jaquez about the purchase.

When police interviewed Stamps, he repeatedly denied being at the mall on the day of the shooting, but acknowledged he recently bought marijuana from a friend down the street. Stamps's fingerprints were recovered from the left rear window of Jaquez's car, and gunshot residue was found on Stamps's hands.

Stamps testified in his own defense and claimed he never saw Jaquez before their encounter at the mall. He said he lied to police when he denied being at the mall because he was scared. Earlier the day of the shooting, Stamps and McDowell were at Coleman's house and were letting Coleman's sister's dog run around in the yard. While Stamps was inside, McDowell came in and told Stamps that a man he had stolen some marijuana from had grabbed the dog. McDowell and Stamps looked for the dog without success before they decided to go to the liquor store at the mall to buy soda and snacks.

When they arrived at the mall, McDowell pointed out Jaquez as the man who grabbed the dog. Stamps decided he would "handle the situation" and offered to pay Jaquez the money he was owed for the stolen marijuana in exchange for the animal. Stamps said he walked calmly to the car and offered to make the exchange. When Jaquez got out of the car and responded in a hostile manner, Stamps pulled out a gun he carried for protections, but kept it pointed down by his leg. Two passengers also got out of the car, but Stamps did not see Wheeler.

When he was standing next to the open driver's door, Stamps leaned into the car to look for the dog, and Jaquez began to approach him. As Stamps pointed the gun towards Jaquez "to get him away," Wheeler walked up to the passenger side of the car, put a package on the seat, reached underneath it, and started "speed walking" around the front of the car. Stamps backed up quickly to make sure Wheeler did not get behind him. As Jaquez and Wheeler approached, Jaquez taunted Stamps to shoot. When Wheeler got within an arm's length, Stamps panicked and fired a warning shot towards the ground. As Wheeler hopped away, Stamps ran to Coleman's car, and the men returned to Coleman's house where they hid until they were found by police. Stamps claimed he did not intend to take Jaquez's car, and denied he heard anyone shout at him to do so. He also claimed his cell phone was not working and he denied calling Jaquez about the dog.

Op. at 2-5.

The state appellate court then found that there was sufficient evidence to support the conviction under either theory:

> 2. Legal Standards
>
> When we consider whether substantial evidence supports a judgment, we examine the whole record in the light most favorable to the judgment. We look for evidence that is reasonable, credible and of solid value that could support a reasonable jury's conclusion that the defendant is guilty beyond a reasonable doubt. Even when the conviction rests upon circumstantial evidence, we presume the existence of every fact the jury could reasonably deduce. Although the jury must acquit a defendant when it finds that circumstantial evidence is susceptible of two interpretations, one pointing to innocence and the other pointing to guilt, it is the jury, not this court that must be convinced of the defendant's guilt beyond a reasonable doubt. When the circumstantial evidence reasonably justifies the trial court's finding of guilt, it makes no difference that we could also reconcile the evidence with a contrary result. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.) "We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 403.) In order to prevail on his claim that the judgment is unsupported by substantial evidence, Stamps must show that neither of the prosecution's murder theories was supported by substantial evidence. (See *People v. Guiton* (1993) 4 Cal.4th 1116, 1129.)
>
> 3. Premeditation and Deliberation
>
> First degree murder includes any killing that is "willful, deliberate, and premeditated…." (Pen. Code, § 189.) We consider the sufficiency of the evidence to support a finding of premeditation and deliberation based on three factors: planning, motive, and manner of killing. (See *People v. Sanchez* (1995) 12 Cal.4th 1, 32, citing *People v. Anderson* (1968) 70 Cal.2d 15.) These factors provide "'a framework to assist reviewing courts in assessing whether the evidence supports an inference that the killing resulted from preexisting reflection and weighing of considerations,'" but they "'are not a sine qua non to finding first degree premeditated murder, nor are they exclusive.'" (*Sanchez, supra*, at pp. 32-33.)
>
> Stamps contends there was insufficient evidence of premeditation and deliberation. Shortly before the killing, Jaquez received several phone calls that began by asking, "where's my dog," and escalated into threats to kill Jaquez and his family. Jaquez testified the calls came from "the number that the defendant had been calling me from," which was the number of the cell phone found in the crawlspace under the house where Stamps and his companions hid before he was arrested. Jaquez recognized the voice of the caller as Stamps. Although Stamps denied knowing anything about the calls, the jury could draw a reasonable inference from this evidence that Stamps made the phone calls to Jaquez. While Stamps suggests the calls could have been made by Coleman, the Attorney General points out there is no evidence Coleman bought drugs from Jaquez.

7

Thus, Jaquez would not have identified Coleman's voice on the phone as someone who bought marijuana from him. Stamps does not dispute the point. McDowell admittedly was involved in the drug buys, but used to call Jaquez from a different number. Jaquez specifically testified that he recognized the voice of the caller, and the threatening calls came from the number associated with the phone recovered from the crawl space. The threats that Jaquez or his family would be killed were enough to allow the jury to conclude Stamps acted after deliberation and premeditation.

But there was more evidence of planning, and the manner of Wheeler's killing that are consistent with premeditation and deliberation. Jaquez and Calles testified that Stamps approached the car with his gun drawn and pointed towards the driver. Stamps also told the car's occupants, 'you remember me, motherfuckers," and the court could logically infer his statement related to the threats previously made to Jaquez. Stamps's apparent response to the exhortation to "[j]ust take his car" could also support an inference that Stamps was acting in concert with someone to carry out a preconceived carjacking. The evidence was sufficient to support a jury finding that Stamps shot and killed Wheeler with premeditation and deliberation.

4. Felony Murder

"A conviction for carjacking requires proof that (1) the defendant took a vehicle that was not his or hers (2) from the immediate presence of a person who possessed the vehicle or was a passenger in the vehicle (3) against that person's will (4) by using force or fear and (5) with the intent of temporarily or permanently depriving the person of possession of the vehicle." (*People v. Magallanes* (2009) 173 Cal.App.4th 529, 534, citing Pen. Code, § 215, subd. (a).) Stamps argues there was no substantial evidence he intended to take Jaquez's car. We disagree.

When Stamps approached the car, Jaquez initially got out and backed away, leaving his keys in the ignition. Both Jaquez and Calles testified that someone standing nearby told Stamps to take the car. Stamps ordered the passengers out of the car at gunpoint and began to get into the driver's seat. When Jaquez and Wheeler approached the car, Stamps backed away and shot Wheeler in the chest. The jury could infer from this sequence of events that Stamps, acting on his associate's urging, attempted to take the car. Contrary to the suggestion in Stamps's opening brief, the prosecutor was not required to show the keys were in the car at the time, although Jaquez testified he left them in the ignition. Stamps's testimony that he did not intend to take Jaquez's car and was only looking inside it for the missing dog does not undermine the evidence supporting the verdict. It was the jury's duty to reconcile conflicting evidence, and there is enough in this record to support the theory that Stamps killed Wheeler during an attempted carjacking.

Op. at 5-6.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The Supreme Court has emphasized that sufficiency of the evidence types of "claims face a high bar in federal habeas proceedings . . ." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (finding that the Third Circuit "unduly impinged on the jury's role as factfinder" and failed to apply the deferential standard of *Jackson* [*v. Virginia*, 443 U.S. 307, 321 (1979)] when it engaged in "fine-grained factual parsing" to find that the evidence was insufficient to support petitioner's conviction). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992); *see*, *e.g.*, *Coleman*, 566 U.S. at 656 ("the only question under *Jackson* is whether [the jury's finding of guilt] was so insupportable as to fall below the threshold of bare rationality"). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Payne*, 982 F.2d at 338 (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, has there been a due process violation. *Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338; *Miller v. Stagner*, 757 F.2d 988, 992-93 (9th Cir.), *amended*, 768 F.2d 1090 (9th Cir. 1985), *cert. denied*, 475 U.S. 1048, *and cert. denied*, 475 U.S. 1049 (1986); *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th Cir.), *cert. denied*, 469 U.S. 838 (1984).

The state appellate court's rejection of this claim was not unreasonable. It first reviewed the requirements of premeditation and deliberation for first degree murder under Penal Code section 189 based on three factors: planning, motive, and manner of killing. *See supra* at 7. Then it reviewed the evidence in support of these factors: Jaquez had received several phone calls involving a missing dog that escalated into threats to kill Jaquez and his family; the calls came from the same number that Petitioner had been calling Jaquez from; this number was for the cell phone found in the crawlspace under the

9

house where Petitioner was hiding at the time of his arrest; and Jaquez recognized the voice of the caller as Petitioner. *Id.* Viewing this evidence in the light most favorable to Respondent, it was reasonable for the state appellate court to conclude "the jury could draw a reasonable inference… that [Petitioner] made the phone calls to Jaquez." *Id.* Although Petitioner suggests that the calls could have come from his companion, Coleman, the state appellate court reasonably rejected this argument because there was no evidence that Coleman had ever bought marijuana from Jaquez such that Jaquez would have recognized Coleman's voice. *Id.* at 8. Nor was Petitioner's other companion, McDowell, connected to the threatening calls because he called Jaquez from a different number, and Jaquez specifically testified that he recognized the voice of the caller as Petitioner rather than McDowell. *Id.* Furthermore, the state appellate court reasonably found there was more evidence of planning and manner of killing: Jaquez and Calles testified that Petitioner approached the car with his gun drawn and pointed towards the driver; Petitioner made the statement, "you remember me, motherfuckers," which the jury could logically infer related to the phone call threats made to Jaquez; and Stamps's response to the exhortation "[j]ust take this car" could support the inference that he was acting in concert with someone to carry out a preconceived plan. *Id.* Lastly, Petitioner's assertion that he did not own the gun with which he shot Wheeler is irrelevant; it only matters that he acted with premeditation and deliberation once it was in his possession, as Respondent asserts. Ans. at 7. This Court need only determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Payne*, 982 F.2d at 338. On this record and weight of evidence showing motive, planning, and manner of killing, the Court is not persuaded that no rational trier of fact could have found proof of guilt beyond a reasonable doubt that Petitioner committed first degree murder with premeditation and deliberation, to establish a due process violation. *See Jackson*, 443 U.S. at 324.

The state appellate court's rejection of this claim based on felony murder was also not unreasonable. After reviewing the elements necessary to prove carjacking, the state

10

appellate court found there was substantial evidence to support the conviction: when Petitioner approached the car, Jaquez left the keys in the ignition as he got out and backed away; both Jaquez and Calles testified that someone nearby told Petitioner to take the car; Petitioner ordered the passengers out of the car at gunpoint and began to get in the driver's seat; when Jaquez and Wheeler approached, Petitioner backed away and shot Wheeler. *See supra* at 8. The state appellate court reasonably determined that a jury could infer from this sequence of events that Petitioner was attempting to take the car with his associate's urging. *Id.* Petitioner's testimony that he did not intend to take the car but was only looking inside for the missing dog does not undermine the evidence in support; the outcome indicates the jury did not find Petitioner's account credible. Lastly, Respondent argues that the fact that Petitioner backed out of the car when Jaquez and Wheeler approached him does not necessarily mean that he never intended to take the car. As stated previously, this Court need only determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Payne*, 982 F.2d at 338. On this record and weight of evidence, the Court is not persuaded that no rational trier of fact could have found proof of guilt beyond a reasonable doubt that Petitioner committed first degree murder during an attempted carjacking to establish a due process violation. *See Jackson*, 443 U.S. at 324.

Based on the foregoing, the state courts' rejection of this due process claim was not contrary to, or involved an unreasonable application of, Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to habeas relief on this claim.

### 2. Jury Instructional Error - CALCRIM No. 361

Petitioner claims the trial court erred by instructing the jury with CALCRIM No. 361 over defense counsel's objections. The instruction given at trial is as follows:

> "If the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilt. The People

11

> must still prove each element of the crime beyond a reasonable doubt. [¶] If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure."

Op. at 7; 2 CT 378.

The state appellate court summarized the context for the giving of CALCRIM No. 361:

> The trial court's decision to deliver the instruction was due to Stamps's failure to explain the presence of his fingerprint on the rear door of Jaquez's car. The court determined that Stamps's failure to explain the fingerprint had bearing on Stamps's credibility. Stamps previously denied he ever met Jaquez and said he was only near the driver's door during their confrontation.

Op. at 7-8.

The state appellate court rejected this claim and found the trial court did not err in giving CALCRIM No. 361:

> Stamps argues the instruction was unwarranted because the prosecutor did not specifically ask him to explain or deny how his fingerprint got on the car door. He supports his argument with the Bench Notes to CALCRIM No. 361 that state: "Before an instruction on this principle may be given the trial court **must** ascertain as a matter of law: (1) if a question was asked that called for an explanation or denial of incrimination evidence; (2) if the defendant knew the facts necessary to answer the question or if some circumstance precluded the defendant from knowing such facts; and (3) if the defendant failed to deny or explain the incriminating evidence when answering the question." (Judicial Council of Cal., Crim. Jury Instns. (2011) Bench Notes to CALCRIM No. 361, p. 138.) Even though the foregoing directive seems unequivocal, the cases cited in the Bench Notes do not explicitly require that the prosecutor ask a specific question about the unexplained evidence. Instead, they consider more broadly whether there is "evidence in the prosecution's case within [the defendant's] knowledge which he did not explain or deny." (See *People v. Saddler* (1979) 24 Cal.3d 671, 682-83; *People v. Marsh* (1985) 175 Cal.App.3d 987, 994; *People v. De Larco* (1983) 142 Cal.App.3d 294, 309; *People v. Marks* (1988) 45 Cal.3d 1335, 1346; see also *People v. Redmond* (1981) 29 Cal.3d 904, 911 [rejecting an argument that the predecessor to CALCRIM No. 361 should not have been given because defendant was not asked to explain or deny adverse evidence at trial]; *People v. Morales* (2001) 25 Cal.4th 34, 49, fn. 7 [jury instructions do not constitute independent legal authority, and at most, when accurate, they restate the law].)

Op. at 7-8.

First of all, the state court's determination that, notwithstanding the "Bench Notes" to CALCRIM No. 361, California cases did not explicitly require that the prosecutor ask a

12

specific question about the unexplained evidence is binding on this court. *See Menendez v. Terhune,* 422 F.3d 1012, 1029 (9th Cir.2005) (state court's determination that, under state law, insufficient evidence warranted a defense instruction, was dispositive of instructional error claim).

The state appellate court then found that Petitioner's other argument had merit, but that any error was harmless:

> Stamps also argues the fingerprint should not be considered incriminating evidence that required an explanation. He says the prosecutor's argument of its significance was speculative. In closing, the prosecutor claimed the fingerprint supported the theory that Stamps intended to steal the car by showing he closed the back door as he prepared to drive the car away. Stamps claims he should not have been expected to anticipate and rebut such a tenuous theory. This argument comes nearer the mark because the case law cautions that an instruction on a defendant's failure to explain or deny evidence against him "should not even be requested by either side unless there is some specific and significant defense omission that the prosecution wishes to stress or the defense wishes to mitigate." (*People v. Haynes* (1983) 148 Cal.App.3d 1117, 1120; see also *People v. Marks, supra,* 45 Cal.3d at p. 1346 [questioning appropriateness of such an instruction when defendant "did not fail to explain or to deny any important evidence against him and… testified extensively to a version of the events that contradicted the prosecution's case in all important respects"].)
>
> But, even if we assume there was no proper basis to instruct the jury with CALCRIM No. 361, any error was harmless. (See *People v. Saddler, supra,* 24 Cal.3d at pp. 679-680, 683 [rejecting argument that predecessor to CALCRIM No. 361 implicated due process, and applying *People v. Watson* (1956) 46 Cal.2d 818, 836 standard to determine prejudice]; accord, *People v. Lamer* (2003) 110 Cal.App.4th 1463, 1471-1472.) The language of the instruction "tells the jury that it would be *unreasonable* to draw an adverse inference if the defendant lacks the knowledge needed to explain or deny the evidence against him," and "contains other portions favorable to the defense…." (*Lamer, supra,* at p. 1472 [courts have routinely found error in giving such an instruction harmless].) The prejudicial effect of CALCRIM No. 361 was also mitigated by CALCRIM No. 200 that informed the jury some instructions may not apply, depending on the jury's factual findings. (See *ibid.,* citing *Saddler, supra,* at p. 684 ["While such an instruction does not render an otherwise improper instruction proper, it may be considered in assessing the prejudicial effect of an improper instruction"].)
>
> Stamps's account of the events that preceded the shooting was substantially contradicted by the eyewitness testimony of not only Jaquez but also Calles, a disinterested bystander. The prosecutor did not refer to CALCRIM No. 361 in closing argument, nor did he argue that Stamps had an obligation to explain or deny the presence

> of his fingerprints on the left rear window. It is not reasonably probable that a result more favorable to Stamps would have been reached had the court not given CALCRIM No. 361. (See *People v. Saddler*, *supra*, 24 Cal.3d at pp. 683-684; *People v. Lamer*, *supra*, 110 Cal.App.4th at pp. 1471-1473.)

Op. at 8-10.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *Prantil v. California*, 843 F.2d 314, 317 (9th Cir.1988).

A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred.[3] *See Calderon v. Coleman*, 525 U.S. 141, 146 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), before granting relief in habeas proceedings. *See Calderon*, 525 U.S. at 146-47.

The state appellate court's rejection of the claim based on harmless error was not unreasonable because any error in giving CALCIRM No. 361 did not have a substantial and injurious effect or influence on the jury's verdict. *See Brecht*, 507 U.S. at 637. Petitioner asserts that the instruction lightened the state's burden of proof because "it gave

---

[3] A "reasonable likelihood" is lower than the "more likely than not" standard but higher than a mere "possibility." *Polk v. Sandoval*, 503 F.3d 903, 910 (9th Cir. 2007).

the jury permission to discredit [Petitioner's] entire testimony and to doubt his veracity as a witness generally." (Pet. at 9.) However, that is simply not what CALCRIM No. 361 instructs. The instruction specifically addresses a defendant's failure to "explain or deny *evidence* against him" and that any failure to do so may be considered by the jury "in evaluating *that evidence*." *See supra* at 11. There is no instruction that a defendant's failure to explain specific evidence should be used to discredit his entire testimony. *Id.* Furthermore, as Respondent points out, the instruction also expressly stated that a defendant's failure to explain or deny the evidence is not enough by itself to prove guilt, that the prosecution must still prove every element of the crime beyond a reasonable doubt, and that it was for the jury to decide the significance and of that failure. *See supra* at 11-12. The state appellate court also discussed another instruction that was considered, i.e., CALCRIM No. 200 which informed the jury that some instructions may not apply, depending on its findings. *Id.* at 13. Furthermore, the state appellate court considered the fact that Petitioner's testimony at trial was contradicted by the eyewitness testimony of not only Jaquez but also Calles, a disinterested bystander. *Id.* at 13. Lastly, the state court noted that the prosecution did not refer to CALCRIM No. 361 in closing argument nor did he argue that Petitioner had an obligation to explain the presence of his fingerprints on the car window and that he failed to do so. *Id.* at 13-14. In light of the instruction itself, the other instructions given, the lack of reference by the prosecution to CALCRIM No. 361, and the weight of the evidence against Petitioner, it cannot be said that the giving of CALCRIM No. 361 had a substantial and injurious effect on the jury's verdict to merit habeas relief. *See Calderon*, 525 U.S. at 146-47.

Based on the foregoing, the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Petitioner is not entitled to federal habeas relief based on this claim.

### 3. Ineffective Assistance of Counsel

Petitioner claims counsel was ineffective because he failed to request CALCRIM

15

No. 522, the instruction for provocation.

The state appellate court stated the legal standard and then rejected this claim:

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that "counsel's representation fell below an objective standard of reasonableness" and that, but for counsel's errors, there is a "reasonable probability" the result of the proceeding would have been different, i.e., "a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) "Judicial scrutiny of counsel's performance must be highly deferential… Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" (*Strickland v. Washington, supra*, at p. 689.) "'Ordinarily, matters involving trial tactics are not subject to judicial hindsight and the courts will not attempt to second-guess trial counsel…'" (*People v. Blomdahl* (1993) 16 Cal.App.4th 1242, 1248.) When "'the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[.]… unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected." (*People v. Wilson* (1992) 3 Cal.4th 926, 936; quoted with approval in *People v. Mendoza Tello* (1997) 14 Cal.4th 264, 266.)
>
> Stamps contends defense counsel was ineffective because he failed to request a jury instruction on provocation that could have supported a second degree murder verdict based on lack of premeditation and deliberation. (CALCRIM No. 522.) [FN] But provocation was never a theory of the defense. Counsel argued imperfect self-defense. The record reflects a tactical decision by defense counsel to instead pursue a voluntary manslaughter theory based on imperfect self-defense, and he later told jurors he did not want to risk losing credibility with them by making arguments they would find implausible. We will not second-guess counsel's strategy. (See *People v. Blomdahl, supra*, 16 Cal.App.4th at p. 1248.)
>
>> FN1. CALRIM No. 522 states: "Provocation may reduce a murder from first degree to second degree []. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. [][¶] [Provocation does not apply to a prosecution under a theory of felony murder.]"
>
> Moreover, the evidence did not warrant an instruction on provocation. Stamps relies on his testimony that he believed he was in danger as he backed away when Jaquez and Wheeler moved towards him. But he cites no authority to support his contention that

16

> any attempt by Jaquez and Wheeler to protect Jaquez's car or prevent Stamps from driving off with it could have supported a provocation instruction. There is nothing in the facts to warrant conclusion that a reasonable person in Stamps's situation would have fired on two unarmed men. (See *People v. Cole* (2004) 33 Cal.4th 1158, 1211.) Finally, as the Attorney General points out, if the jury had accepted Stamps's testimony that he fired impulsively in response to a perceived threat and did not intend to kill or to steal the car, there would have been no premeditation and deliberation, and Stamps would not have been convicted of first degree murder….

Op. at 13-14.

Petitioner must establish two things in order to prevail on a Sixth Amendment ineffectiveness of counsel claim. *See supra* at 19. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. *Id.* at 697; *Williams v. Calderon*, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (applauding district court's refusal to consider whether counsel's conduct was deficient after determining that petitioner could not establish prejudice), *cert. denied*, 516 U.S. 1124 (1996).

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See id.* at 200-202; *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (same). The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v.*

17

*Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The state appellate court's rejection of this claim was reasonable. First of all, it determined that counsel's performance was not deficient, the first *Strickland* prong, because the failure to request CALCRIM No. 522 was based a tactical decision to pursue a voluntary manslaughter theory rather than seeking to reduce the first degree murder charge to second degree. *See supra* at 16. Petitioner's account was that he had no intent to kill or to steal the car, that he fired spontaneously in response to two men approaching him in a threatening manner, and that he aimed the gun downward, without meaning to actually shoot either of them. *Id.* at 6. Accordingly, relying solely on Petitioner's testimony, counsel decided to argue for voluntary manslaughter based on imperfect self-defense. In order to explain the difference between murder and manslaughter, counsel gave hypothetical "examples" of the theory of provocation in closing argument, and then explicitly rejected that provocation was applicable in Petitioner's case by arguing that voluntary manslaughter was the more appropriate theory: "What Keith did, I don't think there's provocation.... What I do believe is applicable is another theory of voluntary manslaughter that's called imperfect self defense." 5 RT 635-636. On this record, the state appellate court's determination that counsel's failure to request CALCRIM No. 522 was based on trial tactics, which it would not second-guess, was reasonable.

Furthermore, Petitioner has failed to establish prejudice, the second *Strickland* prong, because even if the jury had been instructed with CALCRIM No. 522, there is no reasonable likelihood that the outcome of the trial would have been different. As Respondent points out, counsel did not rely on provocation and the state appellate court found that the evidence did not support it. Ans. at 14; *see supra* at 16. Moreover, CALCRIM No. 522 explicitly states that "[p]rovocation does not apply to a prosecution under a theory of felony murder." *Id.* at 16. As discussed above, there was sufficient

18

evidence to support the first degree murder conviction based on felony murder. *Id.* at 10-11. Accordingly, it cannot be said that but for counsel's failure to request CALCRIM No. 522, the result of the proceeding would have been different where provocation would have had no effect on a first degree murder conviction based on felony murder. *See Strickland*, 466 U.S. at 694.

Under a "doubly" deferential review, it cannot be said the state appellate court's rejection of this *Strickland* claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d); *Pinholster*, 131 S. Ct. at 1410-11. Petitioner is not entitled to habeas relief on this claim.

### IV. CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition must be **DENIED**.

Further, a Certificate of Appealability is **DENIED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED**.

Dated: October 4, 2019

BETH LABSON FREEMAN
United States District Judge

Order Denying Petition for Writ of Habeas Corpus; Denying COA
P:\PRO-SE\BLF\HC.12\05753Stamps_denyHC